**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IAN THACKER,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:25-CV-01861-DAC<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff Ian (a/k/a Amy) Thacker[1] challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1) The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Though Amy applied for benefits while living in Illinois (Tr. 186), a subsequent relocation to Ohio makes venue proper here. (*See* ECF #6); *see also* 42 U.S.C. § 405(g) (requiring a civil challenge be brought in "the judicial district in which the plaintiff resides"). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation (non-document entry of Sept. 8, 2025), after which the parties consented to my exercising jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #5). For the reasons below, I **AFFIRM** the Commissioner's decision.

[1] Plaintiff filed this case under the above-captioned name though testified at the hearing to going by the name Amy and using female pronouns. (Tr. 39). The ALJ's decision kept the previous name as a caption and used male pronouns. (Tr. 19-30). For consistency, I maintain the case caption as filed and use the name Amy throughout.

## PROCEDURAL BACKGROUND

Amy applied for SSI on March 10, 2022, alleging disability beginning on February 5, 2021. (Tr. 186). After the claim was denied initially and on reconsideration, Amy requested a hearing before an Administrative Law Judge. (Tr. 81, 92, 96). In June 2024, Amy (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 37-62). On July 30, 2024, the ALJ determined Amy was not disabled. (Tr. 17-31). On July 8, 2025, the Appeals Council denied Amy's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 416.1481). Amy timely filed this action. (ECF #1).

## FACTUAL BACKGROUND

### I. Personal and Vocational Evidence

Amy was 18 years old on the alleged onset date and 21 years old at the administrative hearing. (*See* Tr. 64, 37). Amy has a high school diploma but no past relevant work experience. (*See* Tr. 46, 57).

### II. Medical and Educational Evidence

Amy received special education services for autism since preschool, having been diagnosed with both autism and attention deficit hyperactivity disorder (ADHD). (Tr. 329). Amy was noted to have a developmental disability significantly affecting verbal communication, non-verbal communication, and social interaction and re-enrolled in special education services for autism. (Tr. 331-32). Amy was observed to have lack of eye contact, lack of seeing the other person in the conversation, and slow initiation of verbalization related to fluency difficulties. (Tr. 336). Amy's autism was assessed to negatively impact the ability to shift between activities, regulate emotions, and socially interact and function independently without support. (Tr. 346).

From October 2022 through July 2023, Amy received regular counseling for autism at Crossroads Counseling Services. In these sessions, Amy generally exhibited appropriate behavior, normal speech, normal mood, intact memory, and good concentration but with occasionally poor hygiene and insight and judgment varying from excellent to poor. (*See* Tr. 503, 505, 507, 509, 517, 519, 521, 523, 525, 527, 529, 531). Amy's mood was assessed depressed during a time of interpersonal difficulty. (*See* Tr. 533, 535). In every session, Amy was noted to have an intact functional status. (Tr. 503, 505, 507, 509, 517, 519, 521, 523, 525, 527, 529, 531, 533, 535).

In January 2023, Amy restarted medication management through primary-care provider Meher Medavaram, M.D. (Tr. 675). Amy was diagnosed with a moderate episode of major depressive disorder and autism and was prescribed medications for depression. (Tr. 675-76).

Amy was psychiatrically hospitalized from June 25 through July 5, 2023, after purposefully cutting a wrist. (Tr. 466). Amy was diagnosed with recurrent and severe depression with suicidal ideation, autism, anxiety, and ADHD. (*Id.*). Amy was treated through therapy and medication and responded well. (Tr. 466-67). A mental status examination on discharge found good insight, judgment, and impulse control; euthymic mood; intact attention, concentration, and memory; appropriate and goal-directed thought content; and denied suicidal ideation. (Tr. 467). Amy was instructed to follow up with LifeStance Health for outpatient psychotherapy. (*Id.*).

Amy followed up with LifeStance Health as instructed in July 2023 for anxiety treatment. (Tr. 543). A mental status examination noted intact thought processes, memory, and knowledge; a mildly impaired attention span; and fair insight. (Tr. 546). Amy declined to continue medications but continued regular counseling. (Tr. 547).

## III. Teacher Questionnaires

On November 22, 2022, Andrew Porth, Amy's study hall and remote assistance teacher in 11th grade, completed a teacher questionnaire about Amy's functioning across the five domains of childhood functioning. (Tr. 228-34). Mr. Porth reported Amy was at grade level in reading, math, and writing and had no unusual degree of absenteeism. (Tr. 228). Mr. Porth observed Amy had a daily, obvious problem in all activities of the domain of attending and completing tasks. (Tr. 230). In the domain of interacting and relating with others, Mr. Porth observed Amy had a daily, serious problem in making and keeping friends and an obvious problem in asking permission appropriately, but no problems in other activities for that domain. (Tr. 231). Mr. Porth observed no problems in the domains of acquiring and using information, moving about and manipulating objects, and caring for themself. (Tr. 229, 232-33). Tracy Steffes, RN, BSN, PEL-NCSN, reported Amy's diagnosis of autism but the condition had no physical effects. (Tr. 235). Nurse Steffens also noted Amy graduated in 2020, two years before she completed the questionnaire. (Tr. 235-36).

## IV. Opinion Evidence

On December 17, 2022, in connection with the disability application, Amy underwent a consultative psychological examination with Monica Skotnicki, Psy.D. (Tr. 448-52). Dr. Skotnicki observed no difficulties with speech, no emotional distress, appropriate eye contact, Amy was alert and oriented, and demonstrated appropriate insight and judgment. (Tr. 449). Amy reported increased irritability and agitation, trouble communicating and getting a point across, anxiety/nervousness, repetitive hand and feet movements, difficulty with concentration and focus, being forgetful, misplacing things, and being easily distracted and unable to finish tasks. (Tr. 450-51). Dr. Skotnicki diagnosed autism spectrum disorder and ADHD. (Tr. 451-52).

Dr. Skotnicki opined Amy had a mild impairment in understanding and following simple instructions and severe impairments in relating to others; maintaining attention required to perform simple, repetitive tasks; and withstanding the stress and pressure of day-to-day work activity. (Tr. 451). Dr. Skotnicki also opined Amy could not handle funds due to having no experience managing personal finances. (*Id.*).

On January 8, 2023, state agency psychological consultant Donna Galassi-Huspeth, Psy.D., reviewed Amy's file and opined Amy can maintain concentration and persistence to carry out simple and routine tasks and exercise judgment commensurate with this level of task, can maintain work attendance and follow a work routine with normal supervision, should be in work settings with low social contact, should not deal with the public and should be in work setting where the interaction would primarily be with a supervisor, and can deal with the changes inherent in simple and routine work. (Tr. 68-69).

On October 21, 2023, again in connection with the disability application, Amy underwent a second consultative examination with William Skoubis, Psy.D. (Tr. 550-53). Amy reported not taking any medications nor presently seeing a therapist. (Tr. 551). Amy also reported a "varying" focus. (Tr. 552). Dr. Skoubis observed a calm mood, clear speech but with "odd pace and tempo," no evidence of thought disorder, and no suicidal ideation. (Tr. 551).

Dr. Skoubis opined Amy showed no difficulty with concentration or attention, interacted in a "somewhat odd manner"; should have no problem in understanding and carrying out simple, one- or two-step job instructions; has adequate insight and judgment; and has reported challenges in tolerating work stress. (Tr. 552).

On December 11, 2023, state agency psychological consultant Joseph Mehr, Ph.D., reviewed updated records and affirmed Dr. Galassi-Huspeth's opinion. (Tr. 76-77).

## V. Testimonial Evidence

Amy reported being unable to work due to autism, ADHD, and anxiety. (Tr. 47). Amy struggles being around "a lot of people" or crowds and gets anxious or nervous about what people at work might say about gender transitioning. (Tr. 47-49). Amy also has difficulty focusing on one thing for an extended period of time due to ADHD. (Tr. 48, 49). Amy reported not currently being in any treatment and stopped taking medications or going to therapy because they were not helpful. (Tr. 49). Amy never personally made doctor's appointments; instead, Amy's parents made them. (Tr. 55-56). Amy also relied on them for reminders to take medications. (Tr. 56).

Amy graduated from high school in four years. (Tr. 46). Amy reported okay, but not great, grades. (Tr. 51). Amy was interested in pursuing vocational training in graphic design but never tried it due to getting nervous and anxious. (Tr. 52). Amy worked at Walmart but was fired after about a week due to not being efficient or fast enough. (Tr. 53). Amy had difficulty focusing, lifting, walking, and standing all day. (*See* Tr. 54).

Amy lives with her father. (Tr. 50). A typical day for Amy involves getting up, eating breakfast, playing video games, doing chores, eating dinner, and then going to bed. (Tr. 51). Amy plays video games daily for about an hour each day. (Tr. 48). Amy typically plays single-player games. (*Id.*). Amy will get caught up in a game and sometimes neglects chores. (*Id.*). Amy uses a timer to stay on task, though does not use a timer while playing games. (*Id.*). Amy does not go out due to anxiety and does not remember the last time leaving the house without a family member. (Tr. 51, 54). Amy does not drive and never sought a driver's license because of anxiety while

driving. (Tr. 46-47). A year ago, Amy used public transportation to get blood work done. (Tr. 54). Amy has friends online who she speaks to every day but does not see in person. (Tr. 55).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this sequential analysis, the claimant has the burden of proof through Step Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do

other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. § 416.920(c)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Amy had not worked since applying for benefits. (Tr. 19). At Step Two, the ALJ identified autism spectrum disorder and ADHD as severe impairments. (*Id.*). At Step Three, the ALJ found Amy's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 20-22). At Step Four, the ALJ determined Amy's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can occasionally climb ladders, ropes, or scaffolds, work around mechanical parts, or operate a motor vehicle but never work at unprotected heights. He can understand, remember, and carry out simple, routine tasks while frequently interacting with supervisors and occasionally interacting with coworkers but never interacting with the public.

(Tr. 22). The ALJ found Amy did not have past relevant work and so proceeded to Step Five. (Tr. 29). At Step Five, the ALJ found Amy could perform other work, including as a cleaner, warehouse worker, and hand packer. (Tr. 29-30). Thus, the ALJ concluded Amy was not disabled. (Tr. 31).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of

evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## Discussion

Amy argues the ALJ erred by improperly evaluating the teacher questionnaires and the psychological opinions and by improperly evaluating the testimony under Social Security Ruling 16-3p. (ECF #8 at PageID 720). I find no merit to either argument, for the reasons discussed below.

### I. Evaluation of the teacher questionnaires and medical opinions

Amy argues the ALJ erred in evaluating the teacher questionnaire Mr. Porth and Ms. Steffes completed, Dr. Skotnicki's consultative opinion, and the prior administrative finding by Dr. Skoubis. (ECF #8 at PageID 728-30). The Commissioner responds the ALJ did not need to assess teacher questionnaires using the factors for assessing medical opinions but did so anyway and substantial evidence supports the ALJ's conclusions. (ECF #9 at PageID 744-45). The Commissioner further responds Amy's arguments about Dr. Skotnicki's opinion amount to an impermissible invitation to reweigh the evidence and the argument about Dr. Skoubis' opinion is unclear and undeveloped and thus should be deemed waived. (*Id.* at PageID 746).

In assessing the claimant's RFC, the ALJ must review all medical opinions and prior administrative findings and explain how persuasive he finds them. *See* 20 C.F.R. § 416.920c(b); *see*

*also Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ need not explain how persuasive he finds nonmedical sources. 20 C.F.R. § 416.920c(d). The ALJ considers five factors to determine persuasiveness: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R § 416.920c(c)(1)-(5). The regulations require the ALJ to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion," the two most important factors. *See id.* § 416.920c(b)(2). *Supportability* is "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation" and *consistency* is "the extent to which the opinion is consistent with evidence from other medical sources and nonmedical sources in the claim." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5859, 2017 WL 168819 (Jan. 18, 2017).

The ALJ's explanation should "generally include[] an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or prior administrative medical finding is with other evidence in the claim." *Id.* The reasons for the ALJ's conclusions must be stated in a manner that allows the reviewing court to "trace the path of the ALJ's reasoning" from evidence to conclusion. *Stacey v. Comm'r of Soc. Sec.*, 451 F.App'x 517, 519 (6th Cir. 2011). If the ALJ discusses both consistency and supportability, and substantial evidence supports the discussion, then the reviewing court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No. 1:20-cv-1888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

### A. Teacher questionnaires

First, Amy argues the ALJ incorrectly found the teacher questionnaire Mr. Porth and Nurse Steffes submitted was not fully consistent with the record because the questionnaire was consistent with Amy's school records and Dr. Skotnicki's consultative examination. (ECF #8 at PageID 727-28). The ALJ evaluated the teacher questionnaire as follows:

> Andrew Porth, a special education teacher, interacted with the claimant in study hall during the junior year of high school, completed a Teacher Questionnaire that the claimant had some difficulties making friends and requesting permission appropriately. That form was cosigned by Tracy Steffes, RN, BSN, PEL-NCSN, indicating that the claimant had no physical side effects. These findings are not persuasive as they are not supported by any analysis. They are not fully consistent with the claimant's ability to make friends online, advocate for themselves to secure hormone therapy, and behave appropriately with all medical providers and their staff, and the observations of normal mental status exams by various providers.

(Tr. 28) (citations omitted).

The ALJ did not have to analyze the teacher questionnaires using the persuasiveness factors in 20 C.F.R. § 416.920c. The persuasiveness factors guide how the Commissioner "articulate[s] our consideration of medical opinions and prior administrative medical findings." *Id.* § 416.920c(a)-(b). The Commissioner is "not required to articulate how we considered evidence from nonmedical sources." *Id.* § 416.920c(d). The regulations define "evidence from nonmedical sources" as "any information or statement from a nonmedical source, including the claimant, about any issue in the claim." *Id.* § 416.913(a)(4). Teachers are nonmedical sources. *See Sanders v. Comm'r of Soc. Sec.*, No. 3:23-cv-926, 2024 WL 4363147, at *12 (M.D. Tenn. Sept. 30, 2024) (noting an ALJ must consider "opinion evidence from nonmedical sources such as teachers"). While the questionnaire was also signed by Nurse Steffes, a medical source, that does not convert the entire questionnaire into a medical opinion because Nurse Steffes completed only the section on Amy's medical conditions, medications, health, and physical wellness. (Tr. 235-36). The

portion of the questionnaire on which both the ALJ and Amy rely are Mr. Porth's observations of Amy over the functional domains from his year of teaching Amy in study hall and remote assistance. (Tr. 228). Thus, the ALJ did not have to apply the persuasiveness factors to Mr. Porth's observations.

Though the ALJ need only consider the teacher questionnaire and not articulate a particular evaluation, the ALJ's decision must nevertheless be supported by substantial evidence. *Kelly o/b/o A.N.B. v. Comm'r of Soc. Sec.*, No. CV 20-13109, 2022 WL 1105664, at *5 n.4 (E.D. Mich. Apr. 13, 2022). The ALJ found the teacher questionnaire was not fully consistent with Amy's ability to make friends online, advocate for hormone therapy, and behave appropriately with medical providers, as well as normal findings on mental status examinations.

Amy argues the teacher questionnaire is consistent with Amy being diagnosed with autism and having an IEP and a developmental disability affecting communication and socialization as well as consistent with observations in the education records and Dr. Skotnicki's consultative examination. (*See* ECF #8 at PageID 727-28 (citing Tr. 331, 336, 346, 448-52); ECF #10 at PageID 753 (citing Tr. 331, 336, 346)). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Amy's ability to make friends online is not fully consistent with Mr. Porth's statement Amy has a daily serious problem making and keeping friends. (Tr. 231). Similarly, the mental status examinations consistently found good attention and concentration and an intact memory. (*See* Tr. 503, 505, 507, 509, 517, 519, 521, 523, 525, 527, 529, 531, 533, 535). Those findings are not fully consistent with Mr. Porth's statement that Amy has obvious problems in all activities of attending

and completing tasks. (Tr. 230). Amy does not attempt to negate the ALJ's rationale but invites the court to find Mr. Porth's statement to be persuasive because Amy's IEP and Dr. Skotniki's opinion are more weighty than the objective findings from mental status examinations, which I cannot do. *See Brainard*, 889 F.2d at 681. Thus, substantial evidence supports the ALJ's finding that Mr. Porth's statement is inconsistent with the record.

**B. Dr. Skotnicki's consultative opinion**

Next, Amy argues the ALJ erroneously found Dr. Skotnicki's opinion unsupported by her own observations and inconsistent with normal findings in other mental status examinations. (ECF #8 at PageID 729). The ALJ analyzed Dr. Skotnicki's opinion as follows:

> Dr. Skotnicki, PsyD, opined that the claimant has severe impairments in relating to others, maintaining concentration, and in adapting to stress and pressure of daily work activity, and mild limitations in understanding and following simple instructions. The severe limitations are not persuasive as they are not supported by the examiner's observations including that the claimant was alert, oriented, and cooperative while demonstrating adequate concentration and focus during the evaluation with appropriate eye contact, but appear to be based on the assertions of the claimant. They are not consistent with by the observations of normal mental status exams by various providers, the claimant's abilities given the lack of ongoing psychiatric or psychological care, including the ability to play video games for hours, complete household tasks, take medications and manage personal care needs independently, attend medical consultations independently, and serve as their own medical historian, advocate, and decisionmaker, indicative of that the claimant does not have more than moderate mental limitations. As such, the undersigned finds that this examiner overstated the claimant's mental limitations.

(Tr. 28) (citations omitted)

Amy first asserts that Dr. Skotnicki "wrote that Plaintiff's mood was nervous" and the opinion was based on "a review of the medical history along with the presentation during the evaluation." (ECF #8 at PageID 729) (citing Tr. 449, 451). But again, if substantial evidence supports the opined limitations, the reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. The ALJ noted

Dr. Skotnicki observed Amy "was alert, oriented, and cooperative while demonstrating adequate concentration and focus . . . with appropriate eye contact." (Tr. 28). Dr. Skotnicki's finding that Amy "had appropriate ability sustaining adequate concentration and focus throughout the evaluation" is substantial evidence for the ALJ's conclusion that such findings do not support a severe limitation in maintaining concentration and focus. (Tr. 449, 451).

Next, Amy argues the ALJ "based her erroneous conclusion that this report was not consistent with the remainder of the record by citing in general to exhibits which noted that among other records, that Plaintiff had a psychiatric hospitalization." (ECF #8 at PageID 729). Though highly valuable, there is no requirement that an ALJ's decision includes pinpoint citations. *Staib v. Comm'r of Soc. Sec.*, No. 4:23-cv-2353, 2024 WL 4534261, at *10 (N.D. Ohio Oct. 21, 2024); *Newman v. Comm'r of Soc. Sec.*, No. 5:22-cv-1982, 2023 WL 7092886, at *12 (N.D. Ohio Sept. 20, 2023) ("Although [the ALJ's] omission of specific page numbers is inconvenient, the omission has no effect on the validity of the ALJ's rationale."), *report and recommendation adopted*, 2023 WL 7048737 (N.D. Ohio Oct. 26, 2023). As stated above, the court looks to whether the ALJ discusses the regulatory factors and whether substantial evidence supports that discussion. *Paradinovich*, 2021 WL 5994043, at *7. True, Amy was psychiatrically hospitalized in June and July 2023. (Tr. 466). But Amy responded well to treatment and had normal mental status findings on discharge. (Tr. 466-67). The counseling records note that hospitalization, but the mental status examinations consistently yielded normal findings and an intact functional status both before and after the hospitalization. (Tr. 503, 505, 507, 509, 517, 519, 521, 523, 525, 527, 529, 531, 533, 535, 546). Even if "some evidence points the other way," so long as substantial evidence supports

the ALJ's finding, the court must affirm. *See Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) (citing *Blakely*, 581 F.3d at 406).

Last, Amy asserts Dr. Skotnicki's findings were further corroborated by a 2023 diagnosis from Dr. Medavaram and treatment notes from Crossroads Counseling. (ECF #8 at PageID 729-30). Dr. Skotnicki opined Amy had severe (*i.e.*, disabling) impairments relating to others; maintaining attention required to perform simple, repetitive tasks; and withstanding the stress and pressure of day-to-day work activity. (Tr. 451). These findings are inconsistent with the counseling notes from Crossroads. Though Amy correctly notes they detail personal difficulties, the mental status examinations yielded normal findings but occasionally noted poor hygiene, a depressed mood during a time of interpersonal difficulty, and varying insight and judgment ranging from excellent to poor. (*See* Tr. 503, 505, 507, 509, 517, 519, 521, 523, 525, 527, 529, 531, 533, 535). In every session, Amy was noted to have an intact functional status. (*Id.*). Thus, these normal findings and intact functional status are substantial evidence supporting the ALJ's conclusion that Dr. Skotnicki's severe impairments were inconsistent with the evidence.

**C. Dr. Skoubis' consultative opinion**

Next, Amy challenges Dr. Skoubis' consultative examination and the findings of the state agency consultants. (ECF #8 at PageID 730-31). The Commissioner contends this argument is undeveloped and should be deemed waived. (ECF #9 at PageID 746).

I agree with the Commissioner. Amy's brief addresses these opinions as follows:

> In addition, the ALJ found that the second consultative examination was not wholly persuasive (Tr. 28-29). On October 21, 2023, Dr. William Skoubis observed that Plaintiff's speech was odd in pace and tempo and she interacted in an odd manor (Tr. 552). The diagnosis was autism spectrum disorder (*Id.*). The ALJ also found that the opinions of the state agency that Plaintiff could perform simple and routine tasks but low social contact, meaning interacting primarily with a supervisor (Tr. 68-69)

> was not persuasive (Tr. 27-28). The ALJ also found that the statements of observations of Plaintiff were only somewhat consistent with the evidence as Plaintiff has "demonstrated no more than moderate limitations." (Tr. 29).
>
> The record clearly established that the ALJ failed to support her RFC findings as she failed to detail the evidence which supported Plaintiff's allegations regarding limitations and found that the supporting opinions were not persuasive. In this matter, even the state agency reviewers opined that Plaintiff could only interact with a supervisor and not with coworkers or the public. *See Russ v. Comm'r of Soc. Sec.*, No. 1:20cv1838, 2021 WL 3709916, at *9 (N.D. Ohio Aug 20, 2021), where the ALJ failed to give a coherent explanation for her reasoning as her rationale failed to view the entire record. Likewise, the ALJ in this matter offered an inadequate analysis as required by *Russ* and failed to proffer a coherent explanation as required by *Lester* [*v. Saul*, No: 5:20-cv-1364, 2020 WL 8093313], at *10 [(N.D. Ohio Dec. 11, 2020)]. The medical evidence, as set forth above, documented that these opinions were based on clinical observations of Plaintiff and were supported by school records and treatment notes. The ALJ, therefore, failed to support her determination regarding the supportability and consistency of these opinions. Opinions which were inconsistent with her RFC, thereby establishing that the RFC was not supported by substantial evidence necessitating a remand of this matter.

(ECF #8 at PageID 730-31). While this passage describes the ALJ's decision, uses many Social Security terms, and cites both the record and case law, it does not articulate a cognizable error by the ALJ in evaluating either Dr. Skoubis' consultative opinion or the prior administrative medical findings.

Start with Dr. Skoubis' opinion. Amy's brief mentions Dr. Skoubis' opinion only in the first two sentences and only by describing what the ALJ found. It does not articulate a specific issue with the ALJ's analysis of that opinion. At most, it raises a general complaint that the ALJ "offered an inadequate analysis" and "failed to proffer a coherent explanation" because the "medical evidence, as set forth above, documented that these opinions were based on clinical observations of Plaintiff and were supported by school records and treatment notes." (ECF #8 at PageID 730). This is simply a conclusion without any connection to any supporting evidence. But

the bigger problem is that the ALJ did not find Dr. Skoubis' opinion to be inconsistent with the record. Instead, the ALJ found some limitations vague, but the opinion was otherwise *persuasive*:

> Dr. Skoubis, Psy.D., found the claimant to have no concentration or focus and can understand and carry out simple, one-to-two-step job instructions. These findings are not wholly persuasive as they are not entirely couched in vocational terms recognized by the Agency (one-to-two-step tasks). Nonetheless, the limitation to simple work is consistent with the record as discussed above. Dr. Skoubis also opined that the claimant could manage funds. Notably, the claimant was not engaged in any treatment at the time of this evaluation. The ability to perform at least simple work is consistent with the claimant's abilities given the lack of ongoing psychiatric or psychological care, including the ability to play video games for hours, complete household tasks, take medications and manage personal care needs independently, attend medical consultations independently, and serve as their own medical historian, advocate, and decisionmaker, indicative of that the claimant does not have more than moderate mental limitations, and the observations of normal mental status exams by various providers.

(Tr. 28-29).

Reading the ALJ's analysis, one would expect the brief to challenge the ALJ's sole criticism of Dr. Skoubis' opinion: that the one-to-two-step task limitation was not defined. But that does not appear in the opening brief, and the reply brief does not mention Dr. Skoubis at all; it mentions the teacher questionnaires and Dr. Skotnicki. (*See* ECF #8 at PageID 730-31; ECF #10). Even then, the ALJ's explanation that a limitation to simple tasks is more appropriate than a limitation to a specific number of steps is both acceptable and coherent. *See, e.g.*, *Briggs v. Comm'r of Soc. Sec.*, No. 1:24-cv-947, 2025 WL 1322659, at *20 (N.D. Ohio May 7, 2025), *report and recommendation adopted,* 2025 WL 2673390 (N.D. Ohio Sept. 18, 2025).

Instead, the brief complains generally the ALJ should have found Dr. Skoubis' opinion (and the prior administrative medical findings) supported by and consistent with the clinical observations, school records, and treatment notes. But this is incomprehensible as an alleged error how the ALJ's analysis can be "inadequate" and "incoherent" because it disagrees with the

evidence when the ALJ found the opinion *consistent with* the evidence. As the Sixth Circuit aptly stated in *McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) : "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* at 995-96 (internal citations omitted). That principle is even more apt when the ALJ did the very thing a perfunctory argument complains the ALJ did not do. As such, the undeveloped argument concerning Dr. Skoubis' opinion is waived.

**D. State agency psychological consultants**

Last, Amy appears to challenge the ALJ's evaluation of the state agency psychological consultants' opinions. (ECF #8 at PageID 730). Like the challenge to the analysis of Dr. Skoubis' consultative opinion, the briefing on this issue does not present the issue in a developed way. The opening brief makes a general complaint that the ALJ should have found the prior administrative medical findings supported by and consistent with the clinical observations, school records, and treatment notes and the reply brief discusses only the teacher questionnaires and Dr. Skotnicki's opinion. (*See* ECF #8 at PageID 730-31; ECF #10). The ALJ addressed the prior administrative medical findings as follows:

> At the initial level of the state disability determination services, the reviewers found the claimant to have a severe impairment of autism spectrum disorder imposing mild to moderate mental limitations. These findings are not persuasive, as they are not internally consistent, indicating that the claimant has concentration issues but not finding the ADHD to be a medically determinable impairment, much less a severe impairment as found by the undersigned. They are partially consistent with the claimant's abilities given the lack of ongoing psychiatric or psychological care, including by the observations of normal mental status exams by various providers, the ability to play video games for hours, complete household tasks, take medications and manage personal care needs independently, attend medical consultations independently, and serve as their own medical historian, advocate, and

> decisionmaker, indicative of that the claimant does not have more than moderate mental limitations. Regardless, their findings are not work preclusive.
>
> On reconsideration, the reviewers at the state disability determination services found similarly, but also added additional contact limitations and an unclear statement of "negotiate to get work environment," findings that are not persuasive as they are not supported by analysis that places these restrictions in Agency terminology. They are partially consistent with the claimant's abilities given the lack of ongoing psychiatric or psychological care, including the ability to play video games for hours, complete household tasks, take medications and manage personal care needs independently, attend medical consultations independently where observations of normal mental status exams were noted by various providers, and serve as their own medical historian, advocate, and decisionmaker, indicative of that the claimant does not have more than moderate mental limitations. It is noted that their findings are not work preclusive.

(Tr. 27-28) (cleaned up).

The briefing does not substantively engage with the ALJ's analysis or the regulatory factors. At most it asserts the ALJ's explanation is "inadequate" and not "coherent" because the opinions are supported by and consistent with other evidence in the record. (*See* ECF #8 at PageID 730) (citing *Russ v. Comm'r of Soc. Sec.*, No. 1:20-cv-1838, 2021 WL 3709916, at *9 (N.D. Ohio Aug. 20, 2021); *Lester v. Saul*, No. 5:20-cv-1364, 2020 WL 8093313, at *10 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)). However, *Russ* and *Lester* stand for the simple proposition that an ALJ must evaluate medical opinions using the persuasiveness factors found in 20 C.F.R. §§ 404.1520c and 416.920c and support that evaluation with substantial evidence. *See Russ*, 2021 WL 3709916, at *9; *Lester* 2020 WL 8093313, at *10. There is no argument that the ALJ did not apply the persuasiveness factors, so the sole argument must be that substantial evidence does not support the ALJ's findings. But the presence of other evidence that supports or is consistent with the opinion does not show the ALJ's findings *lack* substantial evidence. At most, it suggests the evidence goes both ways. And the Commissioner's findings are not subject to reversal "merely because there exists in the record substantial evidence

to support a different conclusion." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quotation omitted). The substantial-evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way." *Id.* Thus, in this situation where the claimant does not attempt to show the ALJ's decision *lacked* substantial evidence, but merely shows substantial evidence could support the claimant, the claimant's argument must fail.

## II. Evaluation of Amy's subjective statements

Amy further argues the ALJ wrongly found the testimony inconsistent and not supported by the medical evidence because Amy's testimony was corroborated by the testimony, written statements, and the medical evidence. (ECF #8 at PageID 734-35). The Commissioner responds the ALJ applied multiple regulatory factors when assessing Amy's statements and substantial evidence supports the ALJ's application of those factors and Amy's argument is an impermissible invitation to reweigh the evidence. (ECF #10 at PageID 748-49).

In evaluating the claimant's subjective reports of symptoms, Social Security Ruling (SSR) 16-3p provides that an ALJ must consider the claimant's complaints along with the objective medical evidence, treatment received, daily activities, and other evidence. 2017 WL 5180304, at *5-8 (Oct. 25, 2017). The ALJ also uses the factors outlined in 20 C.F.R. § 404.1529(c)(3) to evaluate the claimant's statements:

1. A claimant's daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

> 6. Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and
>
> 7. Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors but should provide enough assessment to assure a reviewing court that the ALJ considered all relevant evidence and permit the court to "trace the path" of the ALJ's reasoning. *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005).

The ALJ analyzed Amy's statements as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of the claimant's symptoms, they are inconsistent because the degree of limitations asserted is not supported by the medical evidence of record. Dating back to the alleged onset date, the final semester high school, even after shutdowns for COVID-19, the claimant graduated on time with a regular high school diploma and without failing any classes, indicating an ability to adapt to various teaching modalities, even in subjects that were of less interest. The claimant then sought out medical care for non-severe impairments in late 2021, nearly two years after the alleged onset date, at which time all mental status exams were normal. Then, it was not until October 2022 before the claimant sought out any further assistance, at that time, seeking out individual therapy to develop coping skills and, eventually, in preparation for hormone replacement treatment, where it was routinely noted that the claimant's mental status was normal with intact functional status. This treatment lasted less than a year with his final session taking place in July 2023, just after he was released from the inpatient psychiatric stay. As noted above, the claimant saw a provider around this time and appears to have not returned for medication management but his mental status examination was largely intact, including his insight and judgment which suggests he is able to appreciate the need for treatment. Meanwhile, he began to attend to hormone replacement therapy appointments, including doing all of the necessary lab work, consultations that have continued the rest of the year. These therapy and hormone therapy sessions are noted as taking place in the office, demonstrating that the claimant is able to leave to attend to those sessions that are of interest. In these notes, the claimant's mood and behavior are noted to be normal. While there was a setback that led to ten days of inpatient psychiatric treatment after a rupture of the claimant's social relationships online, the claimant stabilized quickly, and within a couple of months, decided to stop all psychiatric medications and was otherwise observed with normal mental statuses during the hormone therapy consultations, psychiatric follow up, and psychological consultative exam. The claimant testified that the capabilities of playing video games,

> complete household tasks, managing medications and personal needs independently has remained intact, indicating the ability to engage in tasks in settings with fewer distractions and expected interactions with others, all without taking any psychiatric medications. Therefore, the undersigned finds that the claimant has shown no more than moderate mental limitations, and as such, is not as limited as otherwise asserted.

(Tr. 26) (citations and footnote omitted).

In this analysis, the ALJ applied multiple regulatory factors and substantial evidence supported that application. The ALJ noted Amy's conditions were aggravated by interpersonal difficulties with friends, a relevant factor under 20 C.F.R. § 416.929(c)(3)(iii), but that psychological treatment was effective. (Tr. 466-67, 546-47). The ALJ also discussed Amy's treatment history, a factor under § 419.929(c)(3)(iv), and noted Amy did not pursue treatment between late 2021 and October 2022, continued treatment through July 2023, but stopped treatment afterward. (*See* Tr. 503, Tr. 547). The ALJ also noted there was no apparent barrier to treatment. (Tr. 26 n.1). That Amy stopped psychological treatment despite normal insight and no apparent barriers is inconsistent with allegations of a disabling mental health condition. The ALJ added that Amy's daily activities, a relevant factor under § 416.929(c)(3)(i), include playing video games and completing household tasks, which are not fully consistent with Amy's allegation of being unable to work due to an inability to focus on one thing for an extended period of time. (*See* Tr. 48, 49). Last, the ALJ explained that Amy's statements were inconsistent with the objective medical evidence, as instructed by § 416.929(c)(2), because the mental status examinations in the record generally yielded normal findings, many of which also noted an intact functional status. (Tr. 503, 505, 507, 509, 517, 519, 521, 523, 525, 527, 529, 531, 533, 535, 467, 546).

Amy asserts the ALJ's findings are "not supported by substantial evidence as the evidence as set forth above supported the allegations regarding her limitations" and "In this matter, the evidence documented Plaintiff's impairments." (ECF #8 at PageID 734, 735). In the context of the

ALJ's evaluation of a claimant's statements, that determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). As mentioned above, the Commissioner's findings are not subject to reversal "merely because there exists in the record substantial evidence to support a different conclusion." *Mullen*, 800 F.2d at 545. Here, the ALJ applied multiple regulatory factors and substantial evidence supported the ALJ's application so the existence of substantial evidence that is consistent with Amy's statements is not a compelling reason to disturb the ALJ's findings.

## CONCLUSION

After reviewing the record, the parties' arguments, and the law, I **AFFIRM** the Commissioner's decision denying supplemental security income.

Dated: September 22, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE